**FILED**

**October 5, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:57 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **DEBORAH DODSON,** | ) | **Docket No. 2016-03-0413** |
| **Employee,** | ) | |
| **v.** | ) | |
| **LHC GROUP,** | ) | **State File No. 39249-2015** |
| **Employer,** | ) | |
| **and** | ) | |
| **THE HARTFORD,** | ) | **Judge Lisa A. Lowe** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER
## GRANTING NEUROLOGIC IMPAIRMENT EVALUATION AND DENYING
## TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge for an Expedited Hearing on October 4, 2017. The central legal issue is whether Ms. Dodson demonstrated she is likely to prevail at a hearing on the merits that she is entitled a neurologic impairment evaluation and temporary total disability benefits.[1] For the reasons set forth below, the Court holds Ms. Dodson demonstrated she is likely to prevail at a hearing on the merits with regard to the neurologic impairment evaluation. However, she failed to demonstrate the likelihood of prevailing with regard to temporary disability benefits. Therefore, the Court grants Ms. Dodson's request in part and denies it in part.

### History of Claim

Ms. Dodson worked for LHC as a private duty nurse. On May 12, 2015, she injured her left ankle and right knee when she tripped and fell at a patient's home. Ms. Dodson sought treatment at Tennova Turkey Creek Emergency Room and then followed

---

[1] Ms. Dodson's DCN also included a request for a pain management appointment as a disputed issue. However, at the hearing, the attorneys advised that LHC provided a panel of pain management physicians; Ms. Dodson selected Dr. Browder, and Dr. Browder is in the process of reviewing Ms. Dodson's medical records and scheduling an appointment. Therefore, the Court will not address the pain management appointment issue.

1

up with Dr. Grant Shirley. Dr. Shirley ordered right knee and left ankle x-rays, which were negative for fracture or dislocation. Dr. Shirley diagnosed Ms. Dodson with right knee internal derangement and left ankle traumatic arthropathy and referred her for an orthopedic evaluation.

Ms. Dodson received authorized orthopedic treatment with Dr. William Johnson, who performed meniscal tear repair surgery on August 5, 2015. Dr. Johnson noted Ms. Dodson had prior surgery to her left ankle and that her current ankle complaints did not represent a surgical problem. Dr. Johnson's treatment focused solely on her right knee, other than a reference on the first visit that Ms. Dodson could continue to wear the ankle stirrup splint and a reference on the second visit that her ankle was doing "a bit better." Dr. Johnson's records do not contain a left ankle diagnosis, and he did not order any diagnostic testing or treatment for Ms. Dodson's ankle. Following knee surgery, Dr. Johnson placed Ms. Dodson on light duty restrictions, recommended physical therapy, and gave her an injection.

Ms. Dodson complained to Dr. Johnson about "numbness that occurs from just above to just below the knee in a non-anatomic pattern." Since Dr. Johnson could not determine the cause of Ms. Dodson's symptoms and he had nothing further to offer her orthopedically, he referred her for a neurology evaluation. Dr. Johnson placed Ms. Dodson at maximum medical improvement (MMI) on April 20, 2017, and assigned a permanent impairment rating of four percent. Even though Dr. Johnson assessed MMI on April 20, 2017, LHC inadvertently continued paying temporary total disability (TTD) benefits until June 5, 2017.

LHC experienced difficulty obtaining a panel of neurologists that would accept a workers' compensation patient. Ms. Dodson confirmed that Dr. Darel Butler would agree to see her, and LHC authorized him as a treating physician. Dr. Butler saw Ms. Dodson on three occasions. He ordered a skin biopsy, nerve conduction studies, and an EMG. Ms. Dodson's nerve conduction studies and EMG were normal, but her skin punch biopsy revealed "small fiber neuropathy." Dr. Butler noted, "This is likely due to further trauma from [sic] on the right lower extremity and the fracture in her left ankle." Although the records submitted into evidence do not contain a referral from Dr. Butler to pain management, his March 23, 2017 note indicates, "she has not been to the pain clinic yet." Also contained in that note, Dr. Butler remarked:

> The patient was told that once we have obtained tissue . . . there was nothing further that we could do to establish a diagnosis. [She] was told that the precise diagnosis was small fiber neuropathy secondary to reflex sympathetic dystrophy from trauma. Patient has not reached MMI; she's not yet [been seen] by the pain clinic.

Dr. Butler's records do not contain any reference to restrictions or inability to work.

Dr. Butler completed a Form C-30A Final Medical Report and indicated Ms. Dodson was unable to work from June 12, 2015, until "to be determined by pain clinic," and, "I don't do impairment ratings."

At the hearing, Ms. Dodson argued that since Dr. Butler agreed to see Ms. Dodson as a workers' compensation patient, he is obligated to provide her with an opinion on permanent impairment. If Dr. Butler refuses to do so, Ms. Dodson insisted she is entitled to a neurologic impairment evaluation with another physician. Additionally, Ms. Dodson claimed she is entitled to TTD benefits from June 5, 2017, until she reaches MMI from a neurologic standpoint. She argued that Dr. Butler is unable to assess her MMI status until she sees a pain management physician.

LHC argued that under Tennessee Code Annotated section 50-6-207(1)(E), Ms. Dodson should be conclusively presumed to be at MMI because as of March 23, 2017, Dr. Butler ceased active treatment with only a recommendation for treatment of her pain with a pain management physician. LHC did not make any arguments related to the neurologic impairment evaluation other than describing its unsuccessful attempts to locate a neurologist who will agree to perform an impairment rating evaluation.

## Findings of Fact and Conclusions of Law

At an Expedited Hearing, Ms. Dodson must come forward with sufficient evidence from which this Court can determine she is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

### Neurologic Impairment Evaluation

Under workers' compensation law, a treating physician *shall* evaluate the employee for purposes of assigning an impairment rating and *shall* complete the evaluation and submit an impairment rating report within the outlined time limits. Tenn. Code Ann. § 50-6-207(k)(4) and (6)(2016) (Emphasis added). Additionally, Rule 0800-02-01-.16(4) of the General Rules of the Workers' Compensation Program provides that the Director may assess a civil penalty against the attending physician of up to $300 for failure to timely file a Form C-32. Therefore, the Court refers this matter to the Penalty Program for potential assessment of a civil penalty against Dr. Butler for failure to provide his impairment opinion.

LHC seemed to agree that Ms. Dodson is entitled to an opinion with regard to whether she sustained any permanent impairment as a result of small fiber neuropathy. Due to LHC's inability to locate a neurologist agreeable to performing an impairment evaluation, the Court suggested that the parties contact the Medical Impairment Rating

3

Registry Program to obtain the names of neurologists who perform impairment rating evaluations. The Court holds that Ms. Dodson came forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits in establishing she is entitled to an impairment evaluation either by Dr. Butler or another neurologist.

*Temporary Total Disability Benefits and MMI Determination*

In order to receive temporary total disability benefits, Ms. Dodson must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

In determining MMI, the legislature has declared that an employee "shall be conclusively presumed to be at maximum medical improvement when the treating physician ends all *active* medical treatment and *the only care provided is for the treatment of pain* or for a mental injury that arose primarily out of a compensable physical injury." Tenn. Code Ann. § 50-6-207(1)(E) (Emphasis added). The Appeals Board applied this section in *Tolbert v. MPW Indus. Servs., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 14 (Mar. 24, 2016). In *Tolbert,* the employee's orthopedic physician placed him at MMI and referred him for pain management. The employee first saw the pain management physician on November 11, 2015. After several visits, the pain management physician assigned restrictions and indicated anticipated MMI in approximately four weeks. The trial court awarded TTD benefits from November 11, 2015, until he returned to work or the pain management physician placed him at MMI. The Appeals Board found the conclusive presumption applied and reversed the trial court's decision because the only treatment option offered was pain management.

In this case, Ms. Dodson last saw Dr. Butler on March 23, 2017. On that date, Dr. Butler did not offer any treatment options other than referencing the fact that the pain clinic did not see Ms. Dodson. In fact, Dr. Butler noted, "The patient was told that once we have obtained tissue . . . there was nothing further that we could do to establish a diagnosis." The Court interprets Dr. Butler's statement to mean that he has nothing further to offer Ms. Dodson other than treatment by the pain management physician to control her pain. The Court finds support for that interpretation in the fact that Dr. Butler indicated Ms. Dodson could follow-up when necessary with regard to a non-work-related stroke but did not indicate that she should follow-up or return to see him for her small fiber neuropathy or unspecified extremity pain.

The Court concludes Dr. Butler's C-30 statement about Ms. Dodson's inability to work from June 12, 2015, until "to be determined by pain clinic" unreliable because he never assigned restrictions or restricted Ms. Dodson from working while treating her. Even if the Court found Dr. Butler's C-30 statement reliable, it only establishes the

4

duration of the period of disability and not a causal connection between the injury and inability to work. Finally, the Court holds that section 50-6-207(1)(E) applies to this case and conclusively presumes Ms. Dodson reached MMI on March 23, 2017, since Dr. Butler ceased active care and the only potential treatment would be related to management of her pain. Thus, the Court holds that Ms. Dodson failed to come forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits in establishing she is entitled to additional TTD benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. LHC shall provide Ms. Dodson with a neurologic impairment evaluation either by Dr. Butler or another neurologist.

2. Ms. Dodson's claim against LHC Group and its workers' compensation carrier for additional temporary total disability benefits is denied at this time.

3. The Court refers this matter to the Penalty Program for potential assessment of a civil penalty against Dr. Butler for failure to provide his impairment opinion.

4. This matter is set for a Scheduling Hearing on November 13, 2017, at 10:00 a.m. Eastern Time. The parties must call 865-594-0109 or 855-383-0003 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED October 5, 2017.**

_Lisa A Lowe_

**LISA A. LOWE, JUDGE**
**Court of Workers' Compensation Claims**

5

## APPENDIX

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Position Statement
5. Notice of Filing of Wage Statement

Exhibits:

1. Affidavit of Deborah Dodson
2. Employee's Choice of Physicians
3. Wage Statement
4. Final Medical Reports, Form C-30A (Collective)
5. Table of Contents and Medical Records of Dr. Butler
6. Table of Contents and Medical Records of Dr. Johnson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on October 5, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Mandy Hancock, Employee's Attorney | | | X | mandy.hancock5000#gmail.com<br><br>mandyhancock@banksandjones.com |
| Joseph Ballard, Employer's Attorney | | | X | Joseph.ballard@thehartford.com |
| Penalty Program | | | X | WCCompliance.Program@tn.gov |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

6